IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Fennell,                           :
                    Appellant             :
                                          :    No. 1198 C.D. 2015
              v.                          :
                                          :    Submitted: October 2, 2015
Captain N D Goss, Lieutenant              :
J. Lear, Lieutenant Allison,              :
Sgt. Workinger, F Baney                   :
Corrections Officer,                      :
J Matula Corrections Officer,             :
Department of Corrections                 :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED: February 5, 2016


            Robert Fennell (Fennell) appeals from the March 4, 2015 order of the
Court of Common Pleas of Huntingdon County (trial court) sustaining the
preliminary objections of Captain N. D. Goss, Lieutenant J. Lear, Lieutenant Allison,
Sergeant Workinger, Corrections Officer F. Baney, Corrections Officer J. Matula,
and the Department of Corrections (collectively, Appellees).  For the following
reasons, we affirm.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when
President Judge Pellegrini assumed the status of senior judge.

## Facts and Procedural History

The facts alleged in Fennell's complaint may be summarized as follows. Fennell is an inmate housed at the State Correctional Institution at Smithfield (SCI-Smithfield). Prior to his transfer to SCI-Smithfield, Fennell was housed at the State Correctional Institution at Houtzdale (SCI-Houtzdale), where he paid monies to the Department of Corrections (DOC) for commissary items and to a magazine vendor for various magazines. In June 2011, Fennell received a misconduct report, and SCI-Houtzdale staff confiscated his commissary. While housed in the Restricted Housing Unit (RHU), Fennell complained to SCI-Houtzdale staff about commissary he never received, and he was advised that his commissary and all other property would be shipped to SCI-Smithfield. On September 7, 2011, Fennell was transferred to SCI-Smithfield. (Complaint at ¶¶ 11-21.)

After his transfer to SCI-Smithfield, Fennell asked SCI-Smithfield staff whether his commissary had been received. Captain N.D. Goss advised Fennell that his property had been received and was being held by Sergeant Workinger until further notice. Fennell submitted several requests to Sergeant Workinger for his commissary; however, Sergeant Workinger advised Fennell that his commissary would be held until his release from the RHU.[2] Fennell alleged that, as a result of his repeated requests for his property, several corrections officers confiscated some of his "legal papers" and "items that will prove or state that [he] is filing a civil suit, including letters, etc." (Complaint at ¶¶ 21-26, 65-69.)

Several weeks after his transfer to SCI-Smithfield, and having not received the magazines he ordered, Fennel sent a letter to the seller inquiring about the status of his orders. The seller advised Fennell that the magazines he ordered had

_____

[2] Fennell has not alleged that he has been released from the RHU.

been sent to the DOC and enclosed delivery receipts establishing that the DOC received them. After Fennell filed grievances and made various attempts to locate the magazines, he was advised that his magazines had been received but were not approved and that he could appeal that determination or choose to send the magazines to his home address. However, Fennell repeatedly demanded that Captain Goss and Lieutenant Allison deliver his magazines. Subsequently, Captain Goss notified Fennell that the magazines had been destroyed.[3] Fennell filed an appeal regarding the destruction of the magazines, reported Captain Goss's conduct to the Program Review Committee, and requested a refund, which was denied. (Complaint at ¶¶ 27-34, 81-94.)

In response to the confiscation and destruction of his property, Fennell filed several grievances. Fennell alleged that he was issued a misconduct report because his "legal papers" showed that he was attempting to file an unrelated civil suit against DOC officers; consequently, Correctional Officers Baney and Matula coerced him into accepting a confiscation slip and destroyed Fennell's pens and radio. Fennell filed grievances regarding the confiscation and destruction of his property "to the highest level of office." (Complaint at ¶38.) Subsequently, Sergeant Workinger informed Fennell that the commissary he was holding until Fennell's release from the RHU had been destroyed. (Complaint at ¶¶ 36-38, 51, 72-77.)

On August 20, 2014, Fennell filed a complaint against Appellees, alleging that Corrections Officers Baney and Matula, Captain Goss, Sergeant Workinger, and Lieutenant Allison individually violated his federal and state

---

[3] Fennell's pleadings do not indicate the date he received notice that the magazines were destroyed nor is that information ascertainable from the record. However, Fennell's complaint suggests the date was sometime between September 2011 and August 2012.

3

constitutional rights to be free from unreasonable searches and seizures and his right to procedural due process by unlawfully confiscating and destroying his property without notice, a hearing, or an opportunity to dispute the confiscation and destruction. Fennell alleged that the DOC violated his constitutional rights by approving and acquiescing to a culture of systematic and unlawful confiscation and destruction of property when it failed to investigate and discipline its agents for violations of its administrative directives. Fennell also alleged that he filed several grievances through the DOC's internal grievance procedure and that the harm he complained of had not been remedied.

On February 9, 2015, Appellees received service of Fennell's complaint and, on February 17, 2015, filed preliminary objections in the nature of a demurrer, arguing that Fennell failed to state a claim upon which relief could be granted. Specifically, Appellees asserted that the items that were confiscated and destroyed were classified as contraband, prisoners do not have a protectable liberty interest in contraband, and consequently, Fennell failed to identify a liberty interest to which any process was due. Appellees argued that the Fourth Amendment's right to be free from unreasonable searches and seizures does not apply to prisoners in their cells. Appellees also argued that Fennell failed to state a cognizable claim against the DOC because a state agency is not considered a "person" under section 1983,[4] and therefore, not subject to a section 1983 suit.

On March 2, 2015, Fennell filed a response to Appellees' motion to dismiss, arguing that the individual Appellees' destruction of his property while acting as the DOC's agents constituted an agency "adjudication" under section 101 of

---

[4] 42 U.S.C. §1983.

the Administrative Agency Law,[5] and therefore, Fennell was entitled to notice and an opportunity to be heard prior to the destruction of his property. Fennell also asserted that the DOC's administrative directives allowing prisoners to purchase commissary created a property interest in the purchased commissary.

By order dated March 4, 2015, the trial court sustained Appellees' preliminary objections. In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that Fennell's due process claims were not subject to review because Fennell could not identify a protected personal or property interest: that is, he could not claim an interest in the property that was confiscated and destroyed because the property was not permitted in the RHU pursuant to the DOC's Administrative Directive 815 which defines contraband and delineates inmates' property interests. The trial court also noted that Fennell was afforded sufficient due process through the prison's internal grievance system. (Trial court op. at 2-3.) Fennell filed a timely appeal to the Superior Court, which subsequently transferred the matter to this Court.[6]

On appeal,[7] Fennell asserts that he stated a *prima facie* procedural due process violation and that his pleadings raised a genuine issue of material fact

---

[5] "Adjudication" is defined, in relevant part, as: "[a]ny final . . . decision . . . affecting personal or property rights . . . ." 2 Pa. C.S. §101.

[6] By order dated July 14, 2015, the Superior Court granted Appellees' application to transfer the action to this Court, stating that transfer was appropriate because this matter involves alleged violations of constitutional rights asserted against Commonwealth defendants.

[7] Our scope of review of a trial court's order sustaining preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Bell v. Rockview State Correctional Facility*, 620 A.2d 645, 647 n.4 (Pa. Cmwlth. 1993). All well-pleaded facts are considered true, and preliminary objections shall only be sustained when they are free and clear from doubt. *Podolak v. Tobyhanna Township Board of Supervisors*, 37 A.3d 1283, 1287 (Pa. Cmwlth. 2012). "Such review raises a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Id*.

regarding whether individual Appellees violated his constitutional rights while acting under color of state law. Fennel further asserts that the trial court erred by considering the DOC's internal grievance procedures as an adequate post-deprivation remedy.

## Discussion

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. This Court has previously held that the same due process analysis applies to both the Pennsylvania Constitution and the Fourteenth Amendment. *See Caba v. Weaknecht*, 64 A.3d 39, 45 (Pa. Cmwlth.), *appeal denied*, 77 A.3d 1261 (Pa. 2013); *Turk v. Department of Transportation, Bureau of Driver Licensing*, 983 A.2d 805, 818 (Pa. Cmwlth. 2009).

Fennell alleges that he stated a legally cognizable claim under 42 U.S.C. §1983 because certain DOC agents confiscated and destroyed his property without notice or an opportunity to dispute the seizure in violation of his Fourteenth Amendment right to procedural due process.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

6

Section 1983 provides a civil remedy for deprivations of federally protected rights caused by persons acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**Fourteenth Amendment**

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court held that a deprivation of property by a state employee does not violate procedural due process if a meaningful post-deprivation remedy is available. *Id*. at 533. The Court noted that "the state's action is not complete until and unless it provides or refuses to provide a suitable post[-]deprivation remedy." *Id*. Accordingly, an inmate cannot state a cognizable procedural due process claim for the deprivation of property by prison officials if an adequate post-deprivation remedy exists. *Id*. The Court concluded that the availability of a state tort action is an adequate remedy for a prisoner's alleged property deprivation. *Id.* at 535.

In *Wheeler v. Delbalso*, (Pa. Cmwlth. No. 639 C.D. 2015, filed, Nov. 3, 2015), an unpublished opinion, we reasoned that an inmate appellant who brought a section 1983 action against DOC employees when his television was confiscated indefinitely failed to state a cognizable procedural due process claim because he had adequate state law remedies available. Specifically, we stated that the availability of state law tort claims and the DOC's grievance procedures were sufficient to satisfy due process and, consequently, the dismissal of the appellant's section 1983 claim

7

was proper. Although *Wheeler* is an unreported memorandum opinion, we nevertheless find its rationale persuasive and applicable to the present case.[8]

Here, Fennel has a viable state tort claim available for his alleged property deprivation and, accordingly, we agree with the trial court's determination that Fennel's section 1983 argument fails.

Next, Fennell argues that the trial court erred when it considered the existence of SCI-Smithfield's internal grievance procedures as an adequate remedy sufficient to satisfy due process. We agree with the trial court that this argument fails because the DOC's internal grievance procedure has been sanctioned as a constitutionally adequate remedy sufficient to satisfy due process.

The decision in *Brown v. Smith* (M.D. Pa., No. 1:12-CV-0446, filed Sept. 25, 2012) is persuasive. In *Brown*, the plaintiffs filed a complaint, alleging that corrections officers at SCI-Smithfield confiscated and destroyed their property without due process. The defendants filed a motion to dismiss the complaint, arguing that the plaintiffs failed to state a claim upon which relief could be granted because the availability of an adequate remedy defeats any due process claim. The court agreed and cited *Hudson*, holding that "'an unauthorized intentional deprivation of property' by prison officials does not violate the Due Process Clause 'if a meaningful post[-]deprivation remedy for the loss is available.'" Slip op. at 3 (quoting *Hudson*, 468 U.S. at 533). The federal court concluded in *Brown* that pre-deprivation notice was not constitutionally required and that the DOC's grievance procedure was a sufficient post-deprivation remedy. *Id*. Moreover, the court noted that the plaintiffs

---

[8] *See* Commonwealth Court Internal Operating Procedure No. 414, 210 Pa. Code §69.414 (an unreported Commonwealth Court panel decision issued after January 15, 2008 may be cited for its persuasive value).

fully utilized the DOC's grievance procedure and that "mere dissatisfaction with the outcome received through due process does not equate to a denial of due process." *Id*.

In the present case, Fennell acknowledges that he pursued redress through the DOC's internal grievance procedures on several occasions but the harm he alleged has not been remedied. (Complaint at ¶¶ 38-39.) Contrary to Fennell's assertion that the trial court improperly considered the existence of DOC's grievance procedures, *Hudson* instructs that the availability of adequate post-deprivation remedies is a necessary inquiry when determining whether a due process violation occurred. 468 U.S. at 533. This Court has held that the DOC's internal grievance procedure provides constitutionally adequate and meaningful legal remedies to inmates. *See, e.g.*, *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999) (holding that due process did not require a preassessment challenge to medical fee assessments when prisoners could challenge assessments through internal grievance procedures); *Waters v. Department of Corrections*, 509 A.2d 430, 433 (Pa. Cmwlth. 1986) (holding that internal grievance system was an adequate remedy and rendered mandamus action unavailable); *see also Wheeler*, slip op. at 4 (affirming dismissal of prisoner's section 1983 claim because adequate state law remedies were available).[9]

---

[9] Although Fennell alleged in his complaint that Appellees unlawfully confiscated his "legal papers" and "letters" that he was going to use to file "a civil suit . . . for different issues" than the destruction of his property (i.e., his commissary, magazines, pens and radio), Fennell does not identify or describe the nature of this suit in either his complaint or appellate brief and does not seek redress based upon these facts. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (explaining that to prevail on a denial of access to legal documents claim, the plaintiff must specifically describe the cause of action and "show that the arguable nature of the underlying claim is more than hope."). We note, however, that if Fennell averred that Appellees confiscated and destroyed legal papers and/or grievance forms that he needed to file his grievance regarding the confiscation of his property, then an issue of fact would exist regarding whether the grievance procedure itself was an adequate post-deprivation remedy; that is, it would be unclear, at this stage of the proceedings,

**(Footnote continued on next page…)**

9

Based on the above authority, we conclude that the trial court did not err in considering the existence of the DOC's internal grievance procedures because those procedures constitute an adequate post-deprivation remedy. Fennel availed himself of this remedy, and as *Brown* advises, dissatisfaction with the result of constitutionally adequate due process procedures does not equate to a denial of due process.[10]

---

**(continued…)**

whether Fennell had a meaningful opportunity to prepare and present his grievance to the DOC. Nonetheless, the only sustainable inference from the facts in the complaint is that Fennell's legal papers pertained to an unrelated lawsuit; therefore, we need not discuss this issue further.

[10] Although the DOC's grievance procedure is a constitutionally adequate alternative remedy sufficient to satisfy due process, it is not clear to this Court that, at least in one respect, Fennell was actually afforded a constitutionally adequate procedure. Fennell acknowledges that he used the DOC's grievance and appeal procedures to dispute the confiscation and destruction of his property. (Complaint at ¶¶ 29, 31, 32, 38, 39, 62.) However, Fennell also alleged that Appellees prematurely destroyed his property before affording him an opportunity to dispute the confiscation in violation of his due process rights.

Pursuant to the DOC's Administrative Directive 815, "[w]hen an inmate files a grievance regarding confiscated contraband, destruction of the property will only occur after the appeal process has been exhausted." (DC-ADM 815, section 3(C)(8), *available at* http://www.cor.pa.gov/Administration/Pages/DOC-Policies.aspx#.VnmkTP6FNaQ.) Fennell alleged that his property, which was confiscated as contraband, was destroyed before he had an opportunity to dispute the confiscation, and thus, exhaust the appeal process. (Complaint at ¶¶ 72-75.)

Here, the well-pleaded facts raise doubts regarding whether Appellees complied with the DOC's Administrative Directive 815, which appears to have conferred upon Fennel an entitlement interest created by state law for purposes of the due process clause. As such, it is unclear whether the grievance procedure provided Fennell with adequate due process because the procedure, as applied to the facts of this case, allegedly deprived him of rights granted by Administrative Directive 815, particularly the opportunity to appeal and be heard prior to the destruction of property confiscated as contraband.

**(Footnote continued on next page…)**

10

## Fourth Amendment

Additionally, Fennell's argument that Appellees violated his Fourth Amendment right to be free from unreasonable searches and seizures lacks merit. The Supreme Court of the United States has held that the Fourth Amendment's proscription against unreasonable searches and seizures does not apply to prison cells because inmates do not have a reasonable expectation of privacy in their cells. *Hudson*, 468 U.S. at 526.

---

**(continued…)**

The Appellees assert, and the trial court concluded, that the confiscated items constitute contraband pursuant to the DOC's Administrative Directive 815 and, as such, Fennell did not possess a protectable property interest in the items. Of course, an individual cannot state a cognizable claim of deprivation of due process without a property or liberty interest. *Culinary Service of Delaware Valley, Inc. v. Borough of Yardley, Pa.*, 385 Fed. Appx. 135, 146 (3d. Cir. 2010) (affirming dismissal of plaintiff's due process claim for failure to assert a protected interest). We recognize that, despite Administrative Directive 815, a prisoner does not possess a protectable property interest in contraband. *See Lowery v. Cuyler*, 521 F.Supp. 430, 433-34 (E.D. Pa. 1981); *Santiago v. Wetzel* (Pa. Cmwlth., No. 664 M.D. 2012, filed Feb. 21, 2014), slip op. at 3. Nonetheless, upon review of the relevant DOC administrative directive, it is not clear to this Court that the confiscated items, i.e., Fennell's pens and radio, actually constitute contraband, even if Fennell was confined to the RHU.

However, even if the grievance procedures actually afforded to Fennell contravened Administrative Directive 815 and, in so doing, violated due process, Fennell has still failed to state a cognizable and compensable procedural due process claim because he has an adequate post-deprivation remedy available in the form of a state tort action. *See Hudson*, 468 U.S. at 535. This remedy is sufficient to make Fennell "whole" and to compensate him the full fair-market value of his property.

11

Accordingly, the trial court's order sustaining Appellees' preliminary objections is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Fennell,                    :
           Appellant    :
                        :   No. 1198 C.D. 2015
          v.           :
                        :
Captain N D Goss, Lieutenant   :
J. Lear, Lieutenant Allison,     :
Sgt. Workinger, F Baney       :
Corrections Officer,           :
J Matula Corrections Officer,    :
Department of Corrections     :

## *<u>ORDER</u>*

AND NOW, this 5th day of February, 2016, the March 4, 2015 order of the Court of Common Pleas of Huntingdon County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge